| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | WESTERN DISTRICT OF WISCONSIN |
| IN RE: PIRATES HYJACKED ROBBED AND STOLE EVERYTHING, INC., Debtor. | IN BANKRUPTCY NO.: 04-12017 |
| PIRATES HYJACKED ROBBED, AND STOLE EVERYTHING, INC., Plaintiff, | IN ADVERSARY NO.: 04-00117 |
| v. | |
| STATE FAIR PARK EXPOSITION CENTER, Defendant. | MEMORANDUM DECISION |

This matter is before the Court on the defendant's motion for summary judgment dismissing the complaint of the Chapter 11 debtor. That complaint had narrowly escaped dismissal on a prior motion because the allegations contained a small seed of legal viability. That seed proved to be sterile when plaintiff was asked to produce a factual basis for the claim.

The plaintiff ("Pirates") is in the business putting on trade shows. The defendant ("State Fair") leases space for trade shows. Pirates entered into a License Agreement in June 2002 with State Fair for the Milwaukee Home and Garden Show at State Fair Park ("the Garden Show") in March 2003. The license agreement, signed by both Michael A. Meyers ("Meyers"), President of State Fair, and Greg Griswold ("Griswold"), manager of The Milwaukee Home & Garden Show at State Fair Park, LLC, indicated that Pirates was to pay a first deposit of $2,000.00 by July 1, 2002 and a second deposit of $93,040.00 by December 27, 2002 for use of the exposition center. There was no mention in the license agreement of an intent for the contract to be extended to future years. The agreement was "intended to be a final expression of their agreement."[1]

---

[1] Pirates Exhibit 5, State Fair Exhibit A, 2003 License Agreement, Page 13

On January 5, 2003, Meyers sent a letter[2] to Griswold that stated:

> Attached, please find a copy of proposed dates for the Milwaukee Home & Garden Show and the Great Midwest Log Home & Timber Frame Show through the year 2012. These dates are tentative and can not be confirmed until a License Agreement has been executed. [*sic*]
>
> We are looking forward to sitting down with you after the success of your 2003 events and confirming these future dates.

The letter included a list of proposed future dates for the years 2004 through 2012. State Fair then sent a letter[3] in April 2003 to Pirates, requesting signatures on the licensing agreements for the Garden Show, and the Great Midwest Log Home and Timber Frame Show ("the Timber Frame Show") to be held in March and April 2005.

In August 2003, Pirates entered into a license agreement with State Fair for the Garden Show and the Timber Frame Show to be held in 2004.[4] The license agreement indicated that Pirates was to pay a first deposit of $5,000.00 by June 30, 2003, and a second deposit of $108,712.00 by December 22, 2003. There was no mention in the license agreement of any intent for the contract to be extended to future years. Again, the agreement stated that it was "intended to be a final expression of their agreement."[5] However, plaintiff alleges that the $5,000.00 first deposit paid on April 3, 2003 was intended and allocated as a $3,000.00 deposit for the 2004 show, a $1,000.00 deposit for the 2005 show, and a $1,000.00 deposit for the 2006 show. Pirates alleges that an agreement was reached in which the $1,000.00 deposit would then

---

[2] Pirates Exhibit 3

[3] Pirates Exhibits 14

[4] State Fair Exhibit B

[5] State Fair Exhibit B, p. 9

be automatically "rolled over" following the conclusion of each year's show.[6] But Griswold's letter of June 26, 2003[7] which refers to the $5,000 deposit made on April 3, 2003 demonstrates his understanding of State Fair's intention to apply the $5,000 deposit solely to the 2004 contract:

> the remaining $2,000 deposit should have been sufficient security
> to have been able to have been applied to our long standing request
> for continuity in show dates for at least a five year period beyond
> the already requested 2004 show dates, with the consistent
> unwavering message on our part that we would like the contract
> language to reflect the deposit to merely continue to "roll - over"
> each and every year automatically renewing on infinitum so that
> you...always know in advance that we will always have a
> permanent home for our event so long as we continue in good faith
> to be responsive to our contractual requirements.[8]

Griswold knew that State Fair was not crediting the deposit to future years, and requested State Fair to do otherwise.

On April 24, 2003, State Fair by Michael Myers sent to Pirates a letter and copies of a licensing agreement for 2005. The 2005 agreement was to be signed and returned to State Fair before August 1, 2003 or be deemed void at State Fair's sole discretion. The 2005 agreement was never executed by either party.[9]

On April 5, 2004, after the March 2004 show, State Fair notified Pirates that it had no agreement with Pirates for any future shows.[10]

State Fair and Pirates agree as to the standard for summary judgment.

Summary judgment is proper when the "pleadings, depositions,

---

[6] Pirates Memorandum in Opposition to Motion for Summary Judgment, Page 4

[7] Pirates Exhibit 12, p. 2 (highlighted first paragraph)

[8] Pirates Exhibit 12, p. 2 (2nd paragraph immediately after highlighted text)

[9] Pirates Exhibit 14 (an incomplete unsigned copy); State Fair Exhibit C (a complete unsigned copy)

[10] Pirates Exhibit 15; State Fair Exhibit D

> answers to interrogatories, and admissions on file, together with
> affidavits, if any, show that there is no genuine issue of material
> fact and that the moving party is entitled to judgment as a matter of
> law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby,
> Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S.
> 317, 324 (1986). In analyzing whether a question of material fact
> exists, the court construes the evidence in the light most favorable
> to the party opposing the motion. *Anderson*, 477 U.S. at 255.
> "Material facts: are those facts that under the applicable
> substantive law "might affect the outcome of the suit." *Id.* at 248.
>     In opposing a motion for summary judgment, a party cannot
> merely rest on allegations in the pleadings or on conclusory
> allegations in an affidavit, but must come forward with specific
> evidence that a material factual issue exists that must be decided at
> trial. *See, Valentine v. Joliet Township High School Dist.*, 802
> F.2d 981, 986 (7th Cir. 1986); *Koclanakis v. Merrimack Mut. Fire
> Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990); *Mestayer v. Wisconsin
> Physicians Service Ins. Corp.*, 905 F.2d 1077, 1079 (7th Cir.
> 1990).[11]

The documentary evidence submitted in this case compels summary judgment for State Fair.

Pirates' only avenue to recovery ("however bleak")[12] was the part performance exception to the statute of frauds. In my decision on the defendant's motion to dismiss, I eliminated the possibility of the letters between the parties acting as or creating a contract. The "master agreement" (as Pirates refers to it) is a brief letter whose only unequivocal statement is that the dates it contains are tentative and cannot be confirmed until a license agreement is executed. Pirates asks the Court to construe $2,000 of the $5,000 April 3, 2003 deposit as $1000 deposits for 2005 and 2006. In its best light, the documentary evidence shows only that Griswold (Pirates) sought to have State Fair agree to such an arrangement, not that Griswold believed State Fair would or did so apply the deposit. State Fair unequivocally applied the $5,000 deposit to the

---

[11] Because Pirates agrees with State Fair's statement of the summary judgment standard, this was lifted verbatim from State Fair's Memorandum in Support of Defendant's Motion for Summary Judgment, p. 5.

[12] Memorandum Decision of August 19, 2004 denying State Fair's Motion to Dismiss.

2004 agreement, demonstrating that it did not accept Griswold's proposal.

My Memorandum Decision of August 19, 2004 denied State Fair's Motion to Dismiss because the deposits might be part performance by Pirates for 2005 and 2006. It stated:

> According to Pirates, in July 2002, it entered into a licensing agreement with SFPEC for the use of the Wisconsin Exposition center for the years 2003 through 2012. Pirates also alleges that consideration was paid to SFPEC for the years 2003 through 2006. The obligations of SFPEC cannot be performed within one (1) year.
> Wisconsin Statute 241.02(1)(a) provides:
>
>> (1) . . . [E]very agreement shall be null and void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:
>> (a) Every agreement that by its terms is not to be performed within one (1) years from the making thereof.
>
> An exception to this statute of frauds may exist for agreements which are partially performed within one (1) year. The Pirates' deposits for the 2003 through 2006 shows may constitute part performance and may remove the contract from the statute of frauds. However, generally, the mere part performance of an oral contract not to be performed within a year does not take it out of the operation of the statute of frauds. To take an agreement out of the statute of frauds on the grounds of part performance, the acts relied on must unequivocally refer to and result from the agreement. They must be such as would not have been performed but for that very agreement and with a direct view to its performance and must be such as to leave no uncertainty in the case. Curtis Land & Loan Co. v. Interior Land Co., 118 N.W. 853, 855 (Wis. 1908). "The doctrine [of part performance, as exception to statute of frauds,] requires that there be such conduct on the part of the parties in performance of the oral contract that to hold it invalid as violating statute of frauds would itself work a fraud or hardship . . ." Toulon v. Nagle, 226 N.W.2d 480, 488 (Wis. 1975), *citing* Bunbury v. Krauss, 41 Wis. 2d 522, 532 (Wis. 1969). "The theory underlying the part performance rule is that equity will not permit the statute, which was designed to prevent fraud, from being used as instrument of fraud." In re Rogers' Estate, 140 N.W.2d 273, 287-288 (Wis. 1966). "The act of making partial payment . . .

>[may constitute] part performance, and part performance is a
>defense to the statute of frauds." Wamser v. Bamberger, 305
>N.W.2d 158, 160 (Wis. App. 1981).

On the 2004 agreement, State Fair notes the receipt of $5,000 for the 2004 agreement. The 2004 agreement was prepared on August 14, 2003, and signed by both parties on August 15, 2003. The 2005 agreement was prepared on April 24, 2003, and contained no indication of any deposit paid or credited. Griswold's letter of June 26, 2003 acknowledges that State Fair was not crediting the deposits for 2005 and 2006. In its Memorandum in Opposition, Pirates glibly states that the $5,000 of April 3, 2003 deposit was intended to be a deposit of $3,000 for 2004, and $1,000 deposits for 2005 and 2006. The documentary evidence does not support that contention.

Although my prior memorandum decision states that Pirates' only legal toehold was grounded in alleged deposits for 2005 and 2006, Pirates reiterates that the "master agreement" for long-term continuity of the venues is plain and separate and outside the parol evidence rule.[13] The master agreement that Pirates has submitted is a letter dated January 5, 2003, which states in its first paragraph:

>Attached, please find a copy of proposed dates for the Milwaukee
>Home & Garden Show and the Great Midwest Log Home &
>Timber Frame Show through the year 2012. These dates are
>tentative and can not be confirmed until a License Agreement has
>been executed.

Pirates seriously misquotes the second paragraph of the January 5, 2003 letter in its Memorandum. Pirates quotes it as saying, "upon completion of a successful 2003 event, the dates would be confirmed."[14] But it really says:

>We are looking forward to sitting down with you after the success

---

[13] Pirates Memo, p. 2

[14] Pirates Memo, p. 2

of your 2003 events and confirming these future dates.[15]

Pirates claims that the letter created a condition precedent, and that because Pirates had successful events in 2003, State Fair was obligated to contract for 2004 through 2012. I do not believe that the letter can be fairly interpreted as saying that.

There is no written agreement for the years 2005 through 2012. All that exists are letters from Meyers to Griswold. "[L]etters must contain all the elements necessary to constitute an unambiguous contract . . . [T]here must be contained therein a definite offer to sell on the part of the owner . . . and an unqualified acceptance of such offer on the part of the purchaser." Curtis Land & Loan Co. v. Interior Land Co., 118 N.W. 853, 855 (Wis. 1908). A letter expressing a desire "sit down" to contract is not a contract. "[L]etters . . . will not be construed as a contract when it is plain that they were intended only as preliminary negotiations to be followed by a formal contract containing material provisions not contained in or to be inferred from the preliminary letters or communications." Francis H. Leggett Co. v. West Salem Canning Co., 144 N.W. 969, 972 (Wis. 1914).

By failing to sign and return the 2005 agreement in a timely fashion as required by language conspicuous on the face of the agreement, Pirates lost the opportunity to hold a 2005 event at State Fair Park. The 2005 agreement had an August 1, 2003 sign and return deadline. Pirates never signed or returned the agreement. On April 5, 2004, State Fair stated unequivocally to Pirates by letter that State Fair was not interested at all in any future relationship, effectively ending the parties' relationship.

For the foregoing reasons, State Fair's Motion for Summary Judgment is GRANTED.

---

[15] Pirates Exhibit 3, letter from Myers (State Fair) to Griswold (Pirates) of January 5, 2003.

-8-

Dated October __27__, 2004

                                                      ROBERT D. MARTIN
                                                    United States Bankruptcy Judge

<u>UNITED STATES BANKRUPTCY COURT</u>     <u>WESTERN DISTRICT OF WISCONSIN</u>

IN RE: PIRATES HYJACKED ROBBED         IN BANKRUPTCY NO.:  04-12017
    AND STOLE EVERYTHING, INC.,
    Debtor.

PIRATES HYJACKED ROBBED,               IN ADVERSARY NO.:  04-00117
AND STOLE EVERYTHING, INC.,
    Plaintiff,

v.

STATE FAIR PARK EXPOSITION CENTER,
    Defendant.                                                    ORDER

---

The Court having this day entered its memorandum decision in the above-entitled matter,

IT IS HEREBY ORDERED that judgment may be entered for Defendant.


Dated October __27__, 2004

                                                ROBERT D. MARTIN
                                                United States Bankruptcy Judge